## SUPREME COURT OF THE STATE OF GEORGIA,

## AT MACON,

## FEBRUARY TERM, 1851.

Present—JOSEPH H. LUMPKIN, ⎫
⎜HIRAM WARNER, ⎬ Judges.
EUGENIUS A. NISBET, ⎭

9   373
90  266
9   373
e118 763

~~~~~~~~~~~~~~~~~~~~~

No. 69.—JOHN FOX, plaintiff in error, *vs.* The State of Georgia, defendant.

[1.] A defendant in a criminal cause at the second term applies for a contin-uance, setting forth that a material witness was absent—that he had been subpœnaed at the first term and recognised to appear, and that his expenses in attending the Court had been tendered to him, and that he expected to prove by him that he had heard a witness, upon whom he (the defendant) understood the State would mainly rely for a conviction, say "that if hard swearing would send the defendant to the penitentiary, he should go:" *Held*, that the showing was sufficient.

[2.] It is not competent for the Court to refuse a continuance, after a legal showing, upon the ground of the Court's private knowledge of the good character of a witness sought to be impeached by the testimony of the ab-sent witness, on account of whose absence the continuance is asked, and the Court's want of confidence in the integrity of the party moving the continuance.

Indictment for larceny from the house, in Bibb Superior Court. Before Judge Stark, July Term, 1850.

At the July Term, 1850, of Bibb Superior Court, John Fox was placed on his trial for larceny from the house. The defendant moved for a continuance for the absence of a witness, William Robards, who resided in Decatur County.

On the showing for a continuance, it appeared that the witness had been recognized at the last term of the Court to appear and testify in the cause for the defendant. The defendant stated that he expected to prove by the witness, Robards, that he (witness) heard one Simpson, upon whose testimony the defendant understood the State would mainly rely for conviction, say "that if hard swearing would send the defendant to the penitentiary, that he should go." The defendant further stated that he had made efforts to procure the testimony of the witness, and defendant's counsel stated that while he was in attendance upon Decatur Court, he sent word to the witness that if he would attend Bibb Court, the defendant would pay all his expenses.

On his cross-examination, the defendant stated that Simpson had lived in Macon two years. Did not know whether Hughes, Bishop or Smith were present and heard the conversation between himself and Robards, but supposed they might have heard it. Robards was confined in jail at the time of the conversation, charged with stealing a horse and buggy.

The application for a continuance was made on Monday of the second week of the Court. No application had been made to the Court to send for the witness, for the reason, counsel stated, that he expected the witness to be present at the trial, and proposed that the case be postponed until the witness could be sent for; which would require four days only. The Solicitor General proposed to admit upon the trial that Robards would swear what the defendant had stated he would prove by him; which was declined by defendant's counsel. The motion to continue was overruled by the Court, and the trial ordered to progress.

The Jury returned a verdict of guilty. Whereupon, counsel

for defendant moved the Court for a new trial, on the ground that the Court erred in refusing to grant the continuance. The Court overruled the motion for a new trial, and remarked "that in overruling the defendant's showing for a continuance, he did not place much confidence in the truth of the defendant's statements—knowing, as he had, for many years, the witness, Simpson, whose testimony was sought to be assailed, and having no special reason to confide in the integrity of Fox, he thought if a witness intended to act out the corruption ascribed to Simpson, he would not be likely to declare his intentions in advance in the presence of others, and the facts disclosed on the trial left his preconceived opinions of the integrity of Fox unchanged."

Counsel for the defendant excepted.

DeGraffenreid, for plaintiff in error.

Sol. Gen. McCune, for defendant.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] The new trial ought to have been granted, because there was error in not allowing the continuance. The plaintiff in error had used diligence to procure the attendance of his witness. He had been subpœnaed—had been even recognized to appear; he had, through his counsel, tendered to the witness his expenses, and the testimony was material. The party swore that he expected to prove by the absent witness that he heard Simpson, the witness upon whom he understood the State would mainly rely for a conviction, say "that if hard swearing would send the defendant to the penitentiary, he should go." It does not appear that any other witness would prove the same thing. The testimony of the absent witness, then, was wanted to impeach the credibility of a witness upon whose evidence the defendant understood the State mainly relied for a conviction. All proper diligence was used to have the witness at the trial. It is clear that the showing for a continuance was complete.

[2.] Why, then, was it not granted? It appears from the re-

cord before me, that the presiding Judge gave as reasons for refusing the new trial, that he did not place much confidence in the truth of the defendant's statements. " Knowing, as he had (in the language of the Judge) for many years, the witness Simpson, whose testimony was sought to be assailed, and having no special reason to confide in the integrity of Fox, the defendant. If a witness intended to act out the corruption ascribed to Simpson, he would not be likely to declare his intentions in advance, in the presence of others, and the facts disclosed on the trial left his preconceived opinions of the integrity of Fox unchanged." Here, then, are the reasons which influenced the mind of the Judge, in refusing the continuance. They are not only not sufficient, but develop a ground of action in such cases not warranted by the law. Both the application for the continuance and for the new trial were, it is true, addressed to the sound discretion of the Court. But the discretion in such cases cannot override a clear legal right or dispense with a plain rule of law. If the defendant was by law entitled to the continuance, the Court had no discretion to refuse a new trial. The right to a continuance gave him the right to a new trial. There was, as we have seen, no legal objection to the showing for a continuance. Can the Court, when the showing is sufficient, refuse it on account of his personal knowledge of the character of the party making it, and of the witness whose testimony that party is seeking to assail—a knowledge not drawn from evidence before the Court, but from his private sources of information? He, beyond all controversy, cannot. He has no discretion to act upon such knowledge. The discretion allowed in applications for a continuance must be within the law, and must spring out of, and be bounded by what transpires in the case. It cannot be justified upon what the Court, as a man, may or may not know. Justice is administered according to general rules; rules which, if applicable in a single case, must be applicable in all like cases, no matter who are the parties, or what their character. If the Court may dispense with them because of his personal knowledge of the character of the parties before him in one case, he may in all cases. And this would be equivalent to dispensing with them

altogether. The rights of parties—the administration of justice—would depend then, not upon laws which are uniform and equal in their application to all men, and which are prescribed, but upon the idea which a Judge may entertain of the integrity of parties, or the purity of witnesses. It is assuming, and that too, in advance of the trial, the province of the Jury; that is, the right to pass upon the credibility of the witness. Upon the proofs at the trial, the Judge would have no right to say whether the witness, Simpson, be entitled to be believed; much less has he the right before the trial, upon a motion for a continuance, and upon his private knowledge of his character, to assume that he cannot be impeached, and upon that knowledge, coupled with a want of confidence in the integrity of the party, founded likewise on his personal knowledge of his character, refuse a continuance. We are ignorant of the character of both the witness and of the party in this case. It may or may not be true that the one is very good and the other very bad. Let it be conceded that Fox is wanting in integrity—that he is a great scoundrel—yet he is entitled to be tried by the same rules of law by which an innocent and upright man would be tried.

Let the judgment be reversed.